IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURALEI HARRIS,<br><br>          Plaintiff,<br><br>    v.<br><br>BATH & BODY WORKS, LLC,<br>*et al.*,<br><br>          Defendants. | Case No. 14 C 3886<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Bath & Body Works, LLC, *et al.* ("BBW") Motion for Summary Judgment [ECF No. 38]. For the reasons stated herein, the Motion is granted.

### I. BACKGROUND

In assessing BBW's Motion for Summary Judgment, the Court has not considered statements of fact set forth by either side that fail to comply with Local Rule 56.1, and it has deemed as admitted those statements of fact to which the opposing party failed to respond properly. *See, Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). The following facts are undisputed except where noted.

## A. Plaintiff's Employment with BBW

BBW is a nationwide retailer of personal care products and gift items, which operates stores across the country, including in Illinois. Each BBW store is staffed by a team of sales associates, who are led by a Store Manager, who in turn reports to a District Manager. Store Managers are charged with staffing, coaching, and directing the work of all other associates at the store. They are also expected to master and exhibit Store Manager "competencies," or behaviors that guide how a Store Manager is expected to execute her job responsibilities. At all times relevant to this case, Plaintiff Lauralei Harris ("Harris") was employed with BBW as a Store Manager in Niles, Illinois, and her immediate supervisor was District Manager Stephanie Dougherty ("Dougherty").

In September 2011, Dougherty and Plaintiff had a "Mid-Year Touchbase" conversation, wherein Dougherty expressed concern about Plaintiff's job performance. Dougherty informed Plaintiff she needed to increase her focus on developing her sales team by regularly scheduling developmental coaching meetings with her team members and having less tolerance for underperformers. Six months later, in March 2012, Dougherty issued Plaintiff her annual evaluation, in which she again informed Plaintiff that she saw an opportunity for improvement in Plaintiff's coaching of her team. The parties dispute much of what occurred

thereafter, but what is undisputed is that in the following year Plaintiff was issued four Performance Improvement Plans ("PIPs") before ultimately being terminated by BBW.

The catalyst to this series of events was an altercation between Plaintiff and one of her sales team members, Ms. Bellissomo ("Bellissomo"), in April 2012. It is unnecessary to discuss the minutiae of this exchange as it is immaterial to the issues presented on summary judgment, but the Court notes that, as a result, Dougherty issued Plaintiff two PIPs: one for violating the company code of conduct and the other for her performance deficiencies in coaching and developing her team. Plaintiff, who claims that she was threatened by Ms. Bellissomo and that she reported this to Dougherty, disagreed with Dougherty's assessment of what had occurred with Ms. Bellissomo and felt the PIPs were unwarranted. Plaintiff claims she called the Human Resources Department for BBW and her Regional Manager, Kristin Tebo ("Tebo"), to object to how Dougherty had handled the situation. But Plaintiff does not dispute that the PIPs were issued and that each identified an "Action Plan" that she was expected to follow to improve her performance.

Nonetheless, Plaintiff failed to show the necessary improvements under the Action Plans by her "Mid-Year Touchbase" meeting that August. At the meeting, Dougherty again gave Plaintiff specific steps for improving her coaching and

development abilities. Several weeks later, on September 7, 2012, Dougherty issued Plaintiff another PIP, in which she identified specific examples of how Plaintiff had fallen short of meeting the expectations set forth in the Action Plans. Plaintiff admits she understood that the PIP identified gaps in her performance and that Dougherty expected her to improve.

Despite being given several months to meet the objectives in the third PIP, Plaintiff failed to do so, and in early 2013, Dougherty issued Plaintiff a fourth PIP and final written warning — again identifying specific performance gaps. In this PIP, Dougherty also noted the impact Plaintiff's poor coaching skills had on her store's business, including statistics showing that Plaintiff's store ranked in the bottom half of Dougherty's nine-store district in several business metrics. Plaintiff admits she knew that Dougherty expected her to improve and that this was her final written warning. Yet no improvement was seen, and on February 18, 2013, Dougherty terminated Plaintiff's employment with BBW.

### B. Plaintiff's Allegations

Plaintiff alleges that Dougherty discriminated against her on the basis of her age and that she was terminated as a result of this discrimination. To support this claim, Plaintiff cites a series of exchanges with Dougherty, all of which BBW disputes. First, in the summer of 2011, when Plaintiff and Dougherty met

for the first time, Dougherty allegedly referred to Plaintiff as "one of those old managers that [she was] probably going to have to replace." Plaintiff states that the comment made her uncomfortable, but admits she is unsure whether Dougherty used the word "old" in reference to Plaintiff's age or her tenure with BBW. In a meeting between the two a few weeks later after Plaintiff's store had performed well in a recent promotion, Plaintiff asked Dougherty if she still felt she would have to get rid of Plaintiff, and Dougherty allegedly laughed and said "[w]hat do you think?" Plaintiff never reported this incident to anyone at BBW.

Second, Plaintiff claims Dougherty instructed her to put another older store manager on a PIP because she "did not fit the image [of BBW]." In this same conversation, Plaintiff claims that Dougherty made a comment that none of the "old managers" were still employed by BBW. But Plaintiff admits she is unsure whether Dougherty used the word "old" in reference to the managers' age or tenure with BBW.

Finally, Plaintiff relies on two comments that Dougherty made to other managers about Plaintiff. Dougherty allegedly told one store manager that Plaintiff was "an old dog that couldn't learn new tricks," and told another store manager not to ask Plaintiff for advice because "[s]he is just old." Plaintiff did not witness these comments being made, but was

told out about them from the other store managers.  Plaintiff claims she called BBW's Human Resources or Ethics Hotline five times to report some of the comments made by Dougherty, and her concern that she would be fired due to her age, but there is no record of these calls being made.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and [the party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it might affect the outcome of the suit. *Id.*  If the moving party satisfies its burden, the non-moving party must present evidence sufficient to demonstrate that a genuine factual dispute exists.  *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  In doing so, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004).  Rather, the non-moving party must demonstrate "through specific evidence that a triable issue of fact remains on issues for which [that party] bears the burden of proof at trial."  *Knight v. Wiseman,* 590 F.3d 458, 463-64 (7th Cir. 2009).

The judge's role at summary judgment is not to make credibility determinations or weigh the evidence. *Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007). In determining whether a genuine issue of material fact exists, the Court construes all evidence in the light most favorable to the non-moving party. *See, Bellaver v. Quanex Corp.,* 200 F.3d 485, 491-92 (7th Cir. 2000).

### III. ANALYSIS

#### A. Age Discrimination Claim

The Age Discrimination in Employment Act (the "ADEA") makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). While age need not be the sole factor motivating the employer's decision, the plaintiff must establish that age was the *determinative* factor. *See, Gross v. FBL Fin. Servs. Inc.,* 557 U.S. 167, 180 (2009) (holding that under the ADEA's language prohibiting discrimination "because of" age, plaintiff must prove that age was "the 'but-for' cause" of the adverse employment action); *Lindsey v. Walgreen Co.,* 615 F.3d 873, 876 (7th Cir. 2010) (same). Persons over the age of 40 are a protected class under the ADEA. 29 U.S.C. § 631.

A plaintiff may prove age discrimination using either the direct or the indirect (burden-shifting) method of proof. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003). Ultimately, under either method, the plaintiff must demonstrate that the employer would not have made the adverse employment decision in question but for the plaintiff's membership in the protected class. *Id.* at 1061.

### 1. *Direct Method*

To proceed under the direct method of proof, a plaintiff must show, by way of direct or circumstantial evidence, that her employer's decision to take an adverse job action against her was motivated by an impermissible purpose. *Id.* Direct evidence, if believed by the trier of fact, "prove[s] discriminatory conduct . . . without reliance on inference or presumption." *Id.* Direct evidence could take the form of "an admission by the decisionmaker that the adverse employment action was motivated by discriminatory animus." *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009). But a plaintiff need not provide such "smoking-gun" evidence; she "can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Id.* However, the circumstantial evidence must point directly to a discriminatory reason for the employer's action. *Id.* at 777.

Plaintiff does not have "smoking-gun" evidence of BBW's discriminatory motives in terminating her, and therefore relies on circumstantial evidence, namely ambiguous statements, to prove animus towards her based on her age. A remark can raise an inference of discrimination when it was "(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Petts v. Rockledge Furniture LLC,* 534 F.3d 715, 721 (7th Cir. 2008); *see also, Steinhauer v. DeGolier,* 359 F.3d 481, 487–88 (7th Cir. 2004) (concluding that a decisionmaker's comment made in passing to someone other than the plaintiff and unrelated to any employment decision was not sufficient evidence of discriminatory intent). Plaintiff identifies five statements which she contends show discriminatory animus: (1) Dougherty saying "you're one of those old managers that I'm probably going to have to replace"; (2) Dougherty telling Plaintiff that none of the "old managers" were employed by BBW anymore; (3) Dougherty telling Plaintiff to put another older store manager on a PIP because she "did not fit the image [of BBW]"; (4) Dougherty telling another store manager that Plaintiff was "an old dog that couldn't learn new tricks"; and (5) Dougherty telling another store manager not to ask Plaintiff for advice because "[s]he is just old."

At the outset, the Court notes that the last two statements Plaintiff relies upon are hearsay: out-of-court statements

offered to prove the truth of their contents — to prove, that is, that Dougherty made the comments about Plaintiff. *See,* FED. R. EVID. 801(c). Because these statements do not fall within an exception to the prohibition on hearsay, and therefore would be inadmissible at trial, the Court does not consider them. *See, Wragg v. Vill. of Thornton,* 604 F.3d 464, 466 (7th Cir. 2010) ("We review only those facts whose substance would be admissible at trial under a form permitted by the Federal Rules of Evidence. . . ."); *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997) ("[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial. . . .").

Plaintiff fairs no better on the remaining three alleged remarks. The first comment does not point directly to a discriminatory reason for BBW's action in terminating Plaintiff because it is unclear whether Dougherty, in referring to Plaintiff as an "old manager," was commenting on Plaintiff's age or her extended tenure with BBW. Moreover, the comment was made more than 18 months before Plaintiff was terminated. *Petts,* 534 F.3d at 721 (concluding that a decisionmaker's comment made more than a year before the adverse action fails to constitute evidence of discrimination under the direct method); *see also, Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007)(same). The other two comments Plaintiff relies upon —

that an older store manager "did not fit the image" and that none of the "old managers" were still employed by BBW — similarly do not point directly to BBW's discriminatory animus in firing Plaintiff because they were not in reference to Plaintiff or her termination. *See, Petts,* 534 F.3d at 721.

Plaintiff's suspicion that her age may have been a factor in the way she was treated is not enough. Although the Court must draw inferences in Plaintiff's favor as the nonmoving party, the Court may not "draw[] inferences that are supported by only speculation or conjecture." *Brown v. Advocate S. Suburban Hosp.,* 700 F.3d 1101, 1104 (7th Cir. 2012). The evidence Plaintiff has adduced under the direct method is simply too remote and too attenuated to conclude that BBW, through Dougherty, terminated Plaintiff "because of" her age.

### *2. Indirect Method*

Plaintiff also proceeds under the indirect method's burden-shifting framework, which was first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under this method, Plaintiff has the initial burden of proving a *prima facie* case, which consists of four elements: (1) the plaintiff was a member of the protected class, (2) the plaintiff was qualified for the position, (3) the plaintiff was rejected from the position, and (4) the employer treated other similarly situated persons outside of the protected class more favorably. *Stockwell v.*

*City of Harvey,* 597 F.3d 895, 901 (7th Cir. 2010). If the plaintiff establishes those elements, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the burden returns to the plaintiff to prove that the stated reason is mere pretext. *Id.*

Here, Plaintiff's indirect ADEA claim fails because she cannot satisfy the fourth element of a *prima facie* case — she cannot prove that people outside the protected class were systematically treated more favorably. *See, Stockwell,* 597 F.3d at 901. Plaintiff argues that, to satisfy the fourth element, she need only show that her replacement was "substantially younger." *Richter v. Hook-SupeRx, Inc.,* 142 F.3d 1024, 1028 (7th Cir. 1998). But this is not the applicable standard in a disciplinary case such as this. Where Plaintiff claims that she was disciplined by her employer more harshly than another similarly situated employee based on some prohibited reason, she must show that she and the other employee are similarly situated with respect to performance, qualifications, and conduct. *See, e.g., Widmar v. Sun Chem. Corp.,* 772 F.3d 457, 467 (7th Cir. 2014) *cert. denied,* 135 S. Ct. 2892 (2015); *Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 643 (7th Cir. 2008); *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000). This entails showing that Plaintiff and the other employee had the

same supervisor, were subject to the same standards, and engaged in similar conduct without circumstances that would distinguish their behavior. *Radue,* 219 F.3d at 617-18. Finally, Plaintiff can use evidence of more lenient discipline being imposed on similarly situated employees outside the protected class. *Curry v. Menard, Inc.,* 270 F.3d 473, 479 (7th Cir. 2001).

Plaintiff's performance issues were well documented by Dougherty. Plaintiff was only terminated after failing to show improvement after more than a year of warnings. She has presented no evidence showing that another employee suffered similar shortcomings and received the same number of warnings yet was not terminated by BBW. Nor has she shown that she was disciplined by her employer more harshly than another similarly situated employee, or that other employees outside the protected class were systematically treated more favorably by BBW. Without such a point of comparison, it is impossible for Plaintiff to meet her *prima facie* burden. Therefore, the Court need not assess BBW's reasons for disciplining Plaintiff. *Stockwell,* 597 F.3d at 901 (stating that the burden shifts to defendant to articulate some legitimate, nondiscriminatory reason for its action *only if* the plaintiff establishes a *prima facie* case). The Court grants summary judgment in favor of BBW on Plaintiff's age discrimination claim.

## B. Retaliatory Discharge Claim

Plaintiff also claims that BBW retaliated against her for reporting how her supervisor, Dougherty, handled the incident with Bellissomo. BBW admits that Plaintiff satisfies the first element of a retaliatory discharge claim because she was terminated from her position with BBW. But BBW contends that Plaintiff was discharged due to performance issues, not "in retaliation for" reporting Dougherty. BBW also argues that Plaintiff's activity in reporting Dougherty's handling of the incident with Bellissomo was not a protected activity.

As a general rule, an employment contract of unspecified duration may be terminated at any time with or without cause. Illinois law, however, recognizes a narrow exception to the general rule of at-will employment: it permits an employee who is dismissed in violation of a clearly mandated public policy to bring a cause of action for retaliatory discharge. *Turner v. Memorial Med. Center*, 911 N.E.2d 369, 374 (Ill. 2009); *Belline v. K-Mart Corp.*, 940 F.2d 184, 186 (7th Cir. 1991). To state a valid claim of retaliatory discharge, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's protected activities, and (3) that the discharge violates a clearly mandated public policy. *Turner*, 911 N.E.2d at 374. In *Palmateer v. International*

*Harvester Company,* the Illinois Supreme Court discussed the meaning of "clearly mandated public policy," it stated:

> There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. [Citation.] Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed.

*Palmateer v. International Harvester Company,* 421 N.E.2d 876, 878 (Ill. 1981).

The tort of retaliatory discharge seeks to achieve "a proper balance . . . among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." *Id.* In the absence of a clearly mandated public policy, "the employer retains the right to fire workers at will." *Id.* Thus, to succeed on a claim of retaliatory discharge, a plaintiff must articulate the relevant public policy with specificity.

Plaintiff has failed to allege any "clearly mandated public policy" that would be violated if she was in fact terminated for reporting how Dougherty handled the incident with Bellissomo. Plaintiff appears to suggest that public policy protects an

- 15 -

employee's right to report her supervisor's performance or non-criminal conduct. But the Court is unwilling to expand the limited tort of retaliatory discharge to allow for a claim under such a broad theory, absent a statute or case memorializing this policy. *See, Turner,* 911 N.E.2d at 375 ("The phrase 'clearly mandated public policy' implies that the policy will be recognizable simply because it is clear."); accord *Fitzgerald,* 613 N.W.2d 275, 282 (Iowa 2000) (stating that requirement of "well-recognized and clear public policy" "helps ensure that employers have notice that their dismissal decisions will give rise to liability").

Because the Court concludes that Plaintiff did not engage in protected activity and that her discharge did not violate public policy, it need not address the issue of retaliation. *Cf. Turner,* 911 N.E.2d at 375 n.1 ("[T]he element of retaliation, which involves causation and motive, is factual in nature and generally more suitable for resolution by the trier of fact."). But the Court notes that Plaintiff's claim fails on that element as well. Although it is unclear exactly when Plaintiff reported Dougherty, it can be assumed she did so shortly after the incident with Bellissomo occurred — sometime in the spring or early summer of 2012. There is not a sufficient temporal connection between this event and Plaintiff's termination months later, in February of 2013, to

infer a link between the two, especially in light of Plaintiff's well-documented performance issues. *Argyropoulos v. City of Alton,* 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval between Plaintiff's sexual harassment complaint and her subsequent termination was insufficient to infer causation). The Court, therefore, grants BBW's motion for summary judgment on Plaintiff's retaliatory discharge claim.

## IV. CONCLUSION

For the reasons stated herein, BBW's Motion for Summary Judgment [ECF No. 38] is granted, and the case is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                          _____
                                                          Harry D. Leinenweber, Judge
                                                          United States District Court

Dated: 12/15/2015